IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Vikki Nicole Lindsey, as Personal Representative of the Estate of Dustin Ray Payne, Melissa Hopkins, as surviving parent of Dustin Ray Payne, and Scottie Payne, as surviving parent of Dustin Ray Payne,<br><br>    Plaintiffs,<br><br> vs.<br><br>C&J Well Services, Inc., C&J Well Services, Inc. d/b/a C&J Energy Services, C&J Energy Services, Inc., Nabors Completion & Production Services Co., Superior Well Services, Inc., Nabors Drilling Technologies USA, Inc., Nabors Drilling USA, LP, Nabors Corporate Services, Inc., Nabors Industries, Inc., and John Doe, I,<br><br>    Defendants. | **ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Case No. 1:16-cv-019 |

Before the Court is the Defendants' "Motion to Compel Arbitration and Demand for Stay of Litigation" filed on July 14, 2016. See Doc. No. 39. The Plaintiffs filed a response in opposition to the motion on August 15, 2017. See Doc. No. 54. The Defendants filed a reply brief on September 20, 2017. See Doc. No. 55. For the reasons set forth below, the Defendants' motion is granted.

## I.   BACKGROUND

On October 3, 2014, Dustin Ray Payne sustained fatal injuries due to an explosion that occurred as he was commencing welding work on a saltwater tanker trailer. Payne was an employee of Nabors Completion & Production Services Co. ("Nabors") at the time of the

1

incident. According to the complaint, Defendant Superior Well Services, Inc. onwed the property on which Payne sustained his injuries. See Doc. No. 1. On February 9, 2016, the Plaintiffs filed this action against the Defendants seeking damages resulting from Payne's death. See Doc. No. 1. The Plaintiffs' complaint alleges six causes of action: (1) intentional injuries against Nabors Completion & Production Services Co., (2) respondeat superior liability against all defendants, (3) negligence against all defendants, (4) strict liability against all Defendants, (5) premises liability against all Defendants, and (6) a cause of action entitled "Unlicensed Businesses" against Nabors Completion & Production Services Co., Superior Well Services, Inc., Nabors Corporate Services, Inc. and Nabors Industries, Inc. Id. at pp. 5-9. The Plaintiffs specifically request economic damages as well as non-economic damages "representing Dustin Ray Payne, and his family's, pain, suffering, mental anguish, and emotional distress[.]" Id. at p. 10.

On July 14, 2016, the Defendants filed a motion to compel arbitration and stay litigation of this matter. See Doc. No. 39. During Plaintiffs' response time, a notice of bankruptcy was filed, indicating "Defendants C&J Energy Services, Inc. and C&J Well Services, Inc. (f/k/a Nabors Completion & Production Services, Inc.)" filed voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Court"), seeking relief pursuant to Chapter 11 of Title 11 of the United States Code. See Doc. No. 46. Consequently, on August 22, 2016, Magistrate Judge Charles S. Miller, Jr. issued an order staying this action. See Doc. No. 48. On December 8, 2016, the Bankruptcy Court issued an order permitting this action "to proceed to trial and judgment . . . ." See Doc. No. 49-1.

Magistrate Judge Miller lifted the stay in this case on June 6, 2017. See Doc. No. 50. The Plaintiffs subsequently filed a response in opposition to the Defendant's motion to compel

arbitration and further stay the litigation on August 15, 2017. See Doc. No. 54. The Defendants filed a reply brief on September 20, 2017. See Doc. No. 55.

II.     **LEGAL DISCUSSION**

In their motion to compel arbitration and stay this action, Defendants contend all of the Plaintiffs' claims against all Defendants[1] are subject to a Nabors' Employee Dispute Resolution Program ("Dispute Resolution Program") and under such program, the parties must submit the dispute to arbitration. The Plaintiffs contend their claims are not governed by the arbitration provision contained within the Dispute Resolution Program because "Payne did not possess any cognizable legal rights in the wrongful death claim to contract away such an action." See Doc. No. 54.

Payne's employment relationship with Nabors[2] was governed by the Dispute Resolution Program, which provided that in the event of a dispute between Payne and Nabors, the matter would be submitted to an arbitrator. See Doc. No. 41-2. Payne, by accepting the "Nabors Application Release," acknowledged he would be required "to adhere to the Dispute Resolution

---

[1] In the complaint, the Plaintiffs allege claims against Defendants C&J Well Services, Inc., C&J Well Services, Inc., d/b/a C&J Energy Services, and C&J Energy Services, Inc. According to the complaint, on or about March 24, 2015, Defendant C&J Well Services acquired all the business and assets of Defendant Nabors Completion & Production Services, Co. The process of that acquisition was in place no later than June 25, 2014, and was completed by March 25, 2015. See Doc. No. 1, p. 6. The Plaintiffs also allege Superior Well Services, Inc. was in control of the property on which the welding work occurred. Id. at 7.

Defendants C&J Well Services, Inc., C&J Well Services, Inc., d/b/a C&J Energy Services, C&J Energy Services, Inc., and Superior Well Services, Inc. request the claims against them be arbitrated. Neither the Plaintiffs nor Defendants discuss whether these defendants are parties to the Dispute Resolution Program. Because it appears all parties agree these Defendants are bound by the Dispute Resolution Program, the Court, without deciding, assumes such.

[2] The Court notes that it presumes Nabors Completion & Production Services Co., Nabors Drilling Technologies USA, Inc., Nabors Drilling USA, LP, Nabors Corporate Services, Inc., and Nabors Industries, Inc. are bound by the Dispute Resolution Program through paragraph 2D. See Doc. No. 41-2, p. 1.

3

Program and its requirement for submission of disputes to a process that may include mediation and/or arbitration." See Doc. No. 41-1, p. 3. The Dispute Resolution Program is "designed to provide a means for a quick, fair, accessible, and inexpensive resolution of Disputes between the Company and the Company's present and former Employees and Applicants for employment related to or arising out of a current, former or potential employment relationship with the Company." See Doc. No. 41-2, p. 1. Moreover, the Dispute Resolution Program "is intended to create an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms." Id. Specifically, the Dispute Resolution Program requires all *disputes* "be arbitrated on an individual basis." Id. at 3. The Dispute Resolution Program defines a "dispute" to mean:

> [A]ll legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Program or by an agreement to resolve Disputes under the Program, or between a person bound by the Program and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:
> 1. this Program;
> 2. the employment or potential reemployment of an Employee, including the terms, conditions, or termination of such employment with the Company;
> 3. employee benefits or incidents of employment with the Company;
> 4. any other matter related to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin, age, veteran status or disability, sexual of other kinds of harassment; workers' compensation retaliation; defamation; infliction of emotional distress, antitrust claim concerning wages or otherwise, or status, claim or membership with regard to any employee benefit plan;
> 5. an Applicant's application for employment and the Company's actions and decisions regarding such application; and
> 6. any personal injury allegedly incurred in or about a Company workplace or in the course and scope of an Employee's employment.
>
> "Dispute" includes all such matters regardless of when the events on which they are based occurred, including matters based on events occurring before the

> Employee became subject to this Program (so long as such disputes were not previously asserted in a judicial forum) or after termination of the employment relationship.

Id. at 1-2. The Dispute Resolution Program also provides that the Program "applies to and binds the Company, each Employee and Applicant and the *heirs, beneficiaries and assigns of any such person or entity* . . . ." Id. at 3 (emphasis added). The Dispute Resolution Program contemplates that the proceedings "under the Program shall be the exclusive, final and binding method by which Disputes are resolved." Id. at 5.

The Plaintiffs do not challenge the substance of the Dispute Resolution Program or its application to any claim by Payne. Instead, the Plaintiffs contend their claims fall outside the scope of the Dispute Resolution Program because "they were not a party to the contract; therefore, they could not consent to the contract nor was the wrongful death claim a lawful object to which Payne could contract away." See Doc. No. 54, p. 3. The Defendants maintain that the Plaintiffs' claims are subject to arbitration under the Dispute Resolution Program. As a preliminary matter, the Plaintiffs do not identify any cause of action in their complaint as a wrongful death claim, nor do Plaintiffs identify any cause of action as a survival claim. Nonetheless, based upon the type of damages claimed, the Court presumes the Plaintiffs' claims encompass both a wrongful death claim and a survival claim.

Section 32-21-01 of the North Dakota Century Code prescribes when a claim for death by wrongful act is maintainable. Section 32-21-01 provides:

> Whenever the death of a person shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured, if death had not ensued, to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation, limited liability company, or company which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the

>death of the person injured or of the tort-feasor, and although the death shall
>have been caused under such circumstances as amount in law to felony.

N.D.C.C. § 32-21-01. "Wrongful death actions are intended to compensate the survivors of the deceased for the losses they have sustained as a result of a wrongful killing." Sheets v. Graco, Inc., 292 N.W.2d 63, 66 (N.D. 1980). A wrongful death action accrues at the time of the death of the party injured. Id. at 67. Separate from a wrongful death claim, a survival action permits recovery by the representative of the deceased for damages the deceased could have recovered had he lived. See N.D.C.C. § 28-01-26; Weigel v. Lee, 2008 ND 147, ¶ 12, 752 N.W.2d 618. "[S]urvival actions accrue, or come into existence as a legally enforceable right, not at the time of the death of the injured party, but at the time the deceased was first injured." Sheets, 292 N.W.2d at 67.

The Plaintiffs contend that because a wrongful death action arises at the time of death and does not derive from a claim on behalf of the deceased, such claim is independent of those claims that Payne agreed to arbitrate in the Dispute Resolution Program. The Plaintiffs rely upon the decision of the Sixth Circuit Court of Appeals in *Richmond Health Facilities v. Nichols*, 811 F.3d 192 ("*Richmond*"). In *Richmond*, the Sixth Circuit concluded a wrongful death claimant was not required to arbitrate her claim against a nursing facility when the decedent and nursing facility had entered into an agreement to arbitrate disputes. 811 F.3d at 197. The Sixth Circuit explained that under Kentucky law the wrongful death claim belonged only to the statutorily-designated beneficiaries, is independent in nature, and the decedent had no "cognizable legal right" in the wrongful death claim at the time he entered into the arbitration agreement. Id. at 195-96. Consequently, the arbitration agreement could not be enforced against the wrongful death claimant.

The *Richmond* Court relied entirely on the rationale of the Kentucky Supreme Court in *Ping v. Beverly Enterprises*, 376 S.W.3d 581, to conclude the decedent could not bind a wrongful death claimant to arbitrate the claim. In *Ping*, the Kentucky Supreme Court determined a decedent cannot bind his or her beneficiaries to arbitrate a wrongful death claim because the statutory claim is independent from the claims of the decedent. 376 S.W.3d at 597-98. The *Ping* Court noted "[a]lthough in some states the wrongful death action is deemed to be derivative of the personal injury claim, in others the two claims are regarded as independent." Id. at 598. Pursuant to Kentucky's wrongful death statute: "Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent or servant caused it." KRS § 411.130 (1974). This wrongful death statute is in accord with the Kentucky state constitution, which provides for a cause of action for damages against a person or entity for wrongfully causing death and grants the state legislature authority to prescribe the procedure for such claim. Further, Section 411.133 of the Kentucky Revised Statutes provides:

> It shall be lawful for the personal representative of a decedent who was injured by reason of the tortious acts of another, and later dies from such injuries, to recover in the same action for both the wrongful death of the decedent and for the personal injuries from which the decedent suffered prior to death, including a recovery for all elements of damages in both a wrongful death action and a personal injury action.

KRS § 411.133 (1968).

Given the "constitutional status" of the wrongful death claim and the language of Section 411.133, the *Ping* Court concluded there was "no doubt" wrongful death and survival actions are separate and distinct in Kentucky and, therefore, a decedent cannot bind beneficiaries to arbitrate wrongful death claims. 376 S.W.3d at 598-99.

In their reply brief, the Defendants ask the Court to reject the holdings of *Ping* and *Richmond*, and instead follow the courts that have concluded wrongful death actions are derivative of the decedent's claim and subject to the arbitration agreement entered into by the decedent. The Defendants attach the decision from the United States District Court for the District of Nebraska in *Bales v. Arbor Manor*, 2008 U.S. Dist. LEXIS 99215 (D. Neb. July 3, 2008), to their reply brief. In *Bales*, the district court concluded that a wrongful death action was derivative of the deceased's claims based upon the plain language of Nebraska's wrongful death statute. Bales, 2008 U.S. Dist. LEXIS 99215 at *29. The Nebraska wrongful death statute provides:

> Whenever the death of a person, including an unborn child in utero at any stage of gestation, is caused by the wrongful act, neglect, or default of any person, company, or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the person injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, would have been liable if death had not ensued, is liable in an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to felony.

R.R.S. Neb. § 30-809. The language of the Nebraska wrongful death statute is nearly identical to the wrongful death statute of North Dakota. Compare N.D.C.C. § 32-21-01, with R.R.S. Neb. § 30-809. However, the North Dakota Supreme Court has not directly considered or decided whether a wrongful death action is derivative in nature. This Court is convinced the North Dakota Supreme Court, if presented directly with the question, would conclude a wrongful death claim is a derivative claim which the claimant would be bound by agreement to arbitrate.

The wrongful death statutes in both North Dakota and Nebraska make it clear the same "wrongful act, neglect, or default" gives rise to a personal injury action brought by deceased,

8

had death not ensued, and an action for wrongful death when death ensued. In other words, the tortfeasor is liable for such wrongful act, neglect, or default regardless of whether death ensued. Consequently, although a wrongful death action accrues at the time of the death of the injured party and a personal injury (survival) action accrues at the time of injury, recovery in the wrongful death action arises from the same conduct that would have given rise to the deceased's personal injury claim. Id. at 67. But for the decedent's claim for a wrongful act, neglect or default, had death not ensued, the wrongful death claim would not exist. In North Dakota, like Nebraska, a wrongful death claim is derivative of the deceased's claims.

Based upon the derivative nature of wrongful death claims in North Dakota, an arbitration agreement is to be enforced against a wrongful death claimant to the same extent it would have been enforced against the decedent had he survived. The Court's conclusion is in accordance with several decisions of other courts which found wrongful death claims to be derivative in nature. See e.g., In re Labatt Food Serv., L.P., 279 S.W.3d 640, 646 (Tex. 2009) (explaining that a wrongful death action is derivative in nature, as opposed to a survival-type claim, because Texas expressly conditions the beneficiaries' claims on the decedent's right to maintain suit for his injuries); Briarcliff Nursing Home, Inc. v. Turcotte, 894 So. 2d 661, 665 (Ala. 2004) (per curiam) (determining wrongful death claimant was bound by the arbitration provision entered into by the deceased); and Wilkerson ex rel. Estate of Wilkerson v. Nelson, 395 F.Supp.2d 281, 288-89 (concluding wrongful death actions in North Carolina are derivative "because wrongful death actions exist if and only if the decedent could have maintained an action for negligence or some other misconduct if she had survived . . .").

In this case, the Court is further persuaded the Plaintiffs are bound by the Dispute Resolution Program because the Program expressly binds "each Employee and Applicant and *the heirs,*

*beneficiaries and assigns* of any such person or entity . . . ." See Doc. No. 41-2, p. 3 (emphasis added). Given these considerations, the Court concludes the Plaintiffs' claims seeking damages for wrongful death are to be submitted to an arbitrator pursuant to the procedures outlined in the Dispute Resolution Program. Further, the Court has no doubt, based upon its review of the caselaw, that the Plaintiffs' claims encompassing survival claims are to be similarly submitted to an arbitrator.

### III.   CONCLUSION

For the reasons set forth above, the Defendants' motion to compel arbitration (Doc. No. 39) is **GRANTED.** This action is stayed pending arbitration.

**IT IS SO ORDERED**.

Dated this 30th day of November, 2018.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court